UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARMEN HACOPIAN-ARMEN
and LUSINE HAYRAPETYAN,

                          Plaintiffs,                          Case 1:25-cv-02361-JSR

        v.

BLACKROCK, INC.
and JOHN DOE ENTITY 1,

                          Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT BLACKROCK, INC.'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... iii

INTRODUCTION ..................................................................................................................1

FACTS ...................................................................................................................................2

STANDARD ..........................................................................................................................6

ARGUMENT .........................................................................................................................6

    I.   Plaintiffs Have Article III Standing ...............................................................................6

    II.  Plaintiffs State Claims Under the Federal Wiretap Act, for Breach of Contract, and for
        Breach of the Implied Covenant of Good Faith and Fair Dealing ...................................8

        A.  *Federal Wiretap Act* ...........................................................................................8

               1.   Interception ...............................................................................................9

               2.   Consent ...................................................................................................11

        B.  *Breach of Contract* ...........................................................................................14

        C.  *Implied Covenant of Good Faith and Fair Dealing*.................................................17

CONCLUSION.....................................................................................................................19

LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE .......................................................19

# TABLE OF AUTHORITIES

**Cases**

*Albanese v. Citicapital Corp.*,
  2007 U.S. Dist. LEXIS 117565 (E.D.N.Y. March 26, 2007)................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................... 6

*Backhaut v. Apple*
  148 F. Supp. 3d 844 (N.D. Cal. 2015). ..................................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................... 6

*Blumofe v. Pharmatrak*,
  329 F.3d 9 (1st Cir. 2003) ................................................................................................11, 13

*Boykin-Smith v. New York Institute of Technology*,
  2023 N.Y. Misc. LEXIS 11500 (NY Sup. Nassau Cty., Dec. 17, 2023) ................................. 16

*Brown v. Google*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................ 9, 13

*Campbell v. Facebook*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................ 9, 10, 13

*Carvel Corp. v. Diversified Mgmt. Group*,
  930 F.2d 228 (2d Cir. 1991). ............................................................................................ 17

*Cohen v. Casper Sleep*,
  2018 U.S. Dist. LEXIS 116372 (S.D.N.Y. July 12, 2018)...................................................... 14

*Dalton v. Educ. Testing Serv.*,
  663 N.E.2d 289 (N.Y. 1995) ............................................................................................. 17

*Daniel Goldreyer v. Van De Wetering*,
  2017 A.D.2d 434 (1st Dept. 1995)...................................................................................... 17

*DeMicco v. Home Depot USA*,
    101 F. Supp. 2d 122 (E.D.N.Y. 2000) ...................................................................... 16

*Ferrand v. Credit Lyonnais*,
    2003 U.S. Dist. LEXIS 17202 (S.D.N.Y. Sept. 20, 2003) ....................................... 16

*Gillett v. Zara USA*,
    2022 U.S. Dist. LEXIS 143434, 2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ....................... 7

*Graff v. Enodis Corp.*,
    2003 U.S. Dist. LEXIS 4899, 2003 WL 1702026 (S.D.N.Y. March 28, 2003) ....................... 15

*Griggs-Ryan v. Smith*,
    904 F.2d 112 (1st Cir. 1990) ................................................................................. 14

*Hall v. EarthLink Network*,
    396 F.3d 500 (2d Cir. 2005) ................................................................................. 10

*Hamilton v. Westchester Cty.*,
    3 F.4th 86 (2d Cir. 2021) ....................................................................................... 6

*In re DoubleClick Inc. Priv. Litig.*,
    154 F. Supp. 2d 497 (S.D.N.Y. 2001) ................................................................... 14

*In re Google Inc. Gmail Litig.*,
    2013 U.S. Dist. LEXIS 172784 (N.D. Cal. Sept. 26, 2013) ................................... 12

*In re Google Inc. Gmail Litig.*,
    2014 U.S. Dist. LEXIS 36957 (N.D. Cal. March 2014) ................................... 12, 14

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................... 10

*John v. Whole Food Markets Grp.*,
    858 F.3d 732 (2d Cir. 2017) ................................................................................... 7

*Kunda v. Caremark PHC*,
    119 F. Supp. 3d 56  (E.D.N.Y. 2015) ................................................................... 16

*Levin v. HSBC Bank USA*,
  U.S. Dist. LEXIS 6062 (N.Y. Sup. Ct. June 26, 2012) ............................................ 17

*Lobosco v. N.Y. Tel. Co/NYNEX* ,
  751 N.E.2d 462  (N.Y. 2001) ................................................................................. 16

*Lopez v. Apple*,
  519 F. Supp. 3d 672 (N.D. Cal. Feb. 2021) ....................................................... 9, 13

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................. 6

*Maddox v. Bank of New York Mellon*,
  19 F.4th 58 (2d Cir. 2022) ....................................................................................... 8

*Matera v. Google*,
  2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sept. 23, 2016) ................................7, 11

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) .................................................................................... 9

*Personalized Media Communs. v. Starsight Telecast*,
  2000 U.S. Dist. LEXIS 14185 (S.D.N.Y. Sept. 27, 2000) ..................................... 17

*Porsch v. LLR,*
  380 F. Supp. 3d 418 (S.D.N.Y. 2019) ...................................................................... 7

*Rankine v. Levi Strauss & Co.*,
  2023 U.S. Dist. LEXIS 89064, 2023 WL 3582323 (S.D.N.Y. May 22, 2023) ......... 7

*Rassoull v. Maximus*,
  2002 U.S. Dist. LEXIS 21866 (D. Md. Nov. 8, 2002) ........................................... 14

*Rosario v. Icon Burger Acquisition*,
  2022 U.S. Dist. LEXIS 11454 (E.D.N.Y. Jan. 21, 2022) ......................................... 8

*Shuang You Wu v. JP Morgan Chase Bank*,
  2024 U.S. Dist. LEXIS 30494 (S.D.N.Y. Feb. 22, 2024) ...................................... 18

*Snyder v. Fantasy Interactive,*
    2012 U.S. Dist. LEXIS 23087 (S.D.N.Y. Feb. 9, 2012) ...........................................11

*Sorotzkin v. EmblemHealth*,
    2023 U.S. App. LEXIS 29746 (2d Cir. Nov. 8, 2023) ..................................... 18

*Spokeo v. Robins*,
    578 U.S. 330 (2016)............................................................................................ 6

*Sze v. Pang*,
    2015 U.S. Dist. LEXIS 151813 (S.D.N.Y. Nov. 9, 2015)................................. 14

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021)........................................................................................ 7

*U.S. v. Rittweger*,
    258 F. Supp. 2d 345 (S.D.N.Y. 2003) .............................................................. 14

*U.S. v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) ....................................................................... 9, 10

*Watkins v. L.M. Berry & Co.*,
    704 F.2d 577 (11th Cir. 1983) ...............................................................11, 12, 13, 14

*Zaratzian v. Abadir,*
    2014 U.S. Dist. LEXIS 129616 (S.D.N.Y. Sept. 2, 2014) ........................... 9, 10, 13

**Constitutional Provisions**

U.S. Const. art. III ...................................................................................... passim

**Statutes**

18 U.S.C. §§ 2510, *et seq*............................................................................... passim

18 U.S.C. § 2511(1)(a)....................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 8(a) ............................................................................. 6

Federal Rule of Civil Procedure 23(a) ............................................................................ 6

Federal Rule of Civil Procedure 23(b)(3) ....................................................................... 6

Federal Rule of Civil Procedure 23(c)(4) ....................................................................... 6

## INTRODUCTION

This lawsuit concerns Blackrock's surreptitious electronic monitoring, interception, and collection of personal and financial data of former employees and other individuals formerly associated with BlackRock, including illegally monitoring their and their families' personal trading accounts after their employment or other work relationship with BlackRock ended. Plaintiff Armen Hacopian-Armen is a former BlackRock employee. BlackRock continued to monitor Mr. Hacopian's personal trading accounts after BlackRock laid him off, along with the accounts of his wife, Plaintiff Lusine Hayrapetyan, and their minor daughter. BlackRock monitored eight personal trading accounts for almost a year after Mr. Hacopian left the firm. This monitoring gave BlackRock illegal and unauthorized access to Plaintiffs' sensitive financial information and violated data and privacy laws. In addition, BlackRock's continued unlawful monitoring of Plaintiffs' personal financial accounts for nearly one year following Mr. Hacopian's termination was in breach of BlackRock's Personal Trading Policy ("PTP"), which applies to BlackRock employees and other current workers. Plaintiffs' experiences are not unique; there is reason to believe that BlackRock monitored the personal trading accounts of other former employees. In fact, BlackRock suggests that it is at liberty to monitor former employees with impunity because the "PTP does not specify whether or when this electronic feed will be shut off following an employee's termination or departure from BlackRock." Mem. of Law in Supp. of Def. BlackRock, Inc.'s Mot. to Dismiss Under Rules 12(b)(1) and 12(b)(6) ("BlackRock Mem. of Law") at 4. Fortunately, the law says otherwise.

BlackRock seeks to have this lawsuit dismissed, but its arguments are meritless. ***First,*** Plaintiffs have Article III standing because they duly allege concrete harms. Even if they had not alleged as such, courts considering Wiretap Act claims have perforce found Article III standing

because the statutory violation bears a close relationship to the torts of invasion of privacy and intrusion upon seclusion. **Second**, Plaintiffs have stated claims under the Wiretap Act, which protects private electronic communications. For the reasons detailed below, BlackRock's argument that the Wiretap Act claim fails because the transmission of an electronic feed directly to BlackRock is not an "interception" within the meaning of the statute should be rejected. Moreover, BlackRock would have the Court believe that Approved Brokers consent to BlackRock's illegal monitoring, but it is BlackRock's burden to prove consent, and it fails to do so. **Third**, Plaintiffs have stated claims for breach of contract and/or the implied covenant of good faith and fair dealing under New York law.[1]

## FACTS

BlackRock is the world's largest asset manager. Complaint ("Compl.") ¶ 7. It has offices around the world and employs thousands of people in the United States. Compl. ¶ 7. Like many financial firms, BlackRock requires associates to adhere to a PTP, which governs the personal trading and investments of its employees and "contingent workers," including temporary workers and interns, and their families. Compl. ¶ 3, 12. BlackRock's PTP requires its subjects to disclose brokerage or other investment accounts, including private investments, trusts or investment clubs in which they make investment decisions or have direct influence or control or a direct or indirect beneficial ownership interest. Compl. ¶ 13. For the most part, this extends to the brokerage and investment accounts of spouses, domestic partners, dependent children, and any other person on whose behalf the person subject to the PTP makes investment decisions or has direct influence or control. Compl. ¶ 14.

---

[1] Plaintiffs withdraw their claim under New York Civil Rights Law § 52-c.

Everyone subject to BlackRock's PTP must, within 10 days of joining BlackRock, provide their securities holdings information, as well as account information for every account required to be disclosed. Compl. ¶ 15. The PTP provides, in relevant part, that "[p]rior approval via BlackRock's Personal Trading Assistant platform ("PTA") will be required before you are permitted to undertake certain personal investments." Compl. ¶ 16. Everyone subject to BlackRock's PTP is required to conduct their personal trading through a BlackRock Approved Broker, and prior approval through BlackRock's PTA is required before individuals are permitted to undertake certain personal investments. Compl. ¶ 17. (Contingent workers are not required to move their accounts to an approved Broker. Compl. ¶ 17.) Approved Brokers generally provide an electronic feed of personal trading activity directly to BlackRock. Compl. ¶ 18.

Plaintiff Armen Hacopian-Armen joined BlackRock in July 2018, as a Vice President in the firm's Manhattan headquarters. Compl. ¶ 19. Pursuant to the PTP, during Mr. Hacopian's employment, Plaintiffs were required to allow BlackRock to monitor their family's personal brokerage and/or investment accounts. Compl. ¶ 20. Mr. Hacopian was required to, and did, disclose all brokerage or investment accounts that he directly or indirectly influenced or controlled or in which he enjoyed a beneficial ownership interest. Compl. ¶ 21. This included the brokerage and investment accounts of Ms. Hayrapetyan and their financially dependent daughter. Compl. ¶ 21. As required, Plaintiffs conducted their personal trading through a BlackRock Approved Broker. Compl. ¶ 21.

Plaintiffs consented to the monitoring for only as long as Mr. Hacopian was employed by BlackRock. Compl. ¶ 22. Plaintiffs did not consent to having BlackRock continue to monitor, intercept and collect their personal and financial data after Mr. Hacopian's employment at BlackRock ended. Compl. ¶ 24. Mr. Hacopian was laid off in 2024, as part of a reduction in

force. Compl. ¶ 23. This was a painful and humiliating experience for Mr. Hacopian and his family. It also created significant financial strain, and at some points in 2024 Plaintiffs were forced to significantly draw down their retirement accounts early. Compl. ¶ 38.

Mr. Hacopian's "Last Day Worked" was January 10, 2024, and his employment with BlackRock terminated on February 9, 2024. Compl. ¶ 23. As such, BlackRock was required to cease monitoring his and his family's trading accounts on February 9, 2024, at the latest. Compl. ¶ 24. But BlackRock did not discontinue the electronic feed on February 9. Compl. ¶ 28. Instead, for almost an entire subsequent year, BlackRock continued to surreptitiously monitor and intercept Plaintiffs' personal trading account information in real time. Compl. ¶ 28, 62. BlackRock did so by using an electronic feed. Compl. ¶ 62.

BlackRock did so knowingly and intentionally, as it was put on notice to discontinue the feed at least twice in 2024. For instance, on February 9, 2024, Mr. Hacopian took it upon himself to have BlackRock Human Resources confirm that he was no longer subject to the firm's monitoring policies. Compl. ¶¶ 25-27. And, on or about May 2024, Plaintiffs' brokerage accounts were migrated from TD Ameritrade to Charles Schwab & Co., Inc. ("Schwab") and assigned new account numbers with Schwab. Compl. ¶ 29. It stands to reason that BlackRock was made aware of the changes and was thereby afforded yet another opportunity to cease monitoring Plaintiffs' accounts and discontinue its illegal electronic feed. Compl. ¶ 30. Nonetheless, again, BlackRock continued to monitor Plaintiffs' trading activity. Compl. ¶ 31.

On or about January 2, 2025, Mr. Hacopian learned that, despite having been separated from BlackRock for almost a year, BlackRock's electronic feed was still active, and BlackRock was still monitoring his and his family's personal trading accounts. Compl. ¶ 32. On or about the same day, Mr. Hacopian emailed BlackRock and instructed it to "stop monitoring my accounts."

Compl. ¶ 33. He did not receive a response for four days. Compl. ¶ 34. On January 6, 2025, BlackRock employee Lamar Holman informed Mr. Hacopian that he would have the issue "addressed ASAP." Compl. ¶ 35. In that January 6 email, Mr. Holman instructed two other BlackRock employees to "please have *all* the below ex-employees accounts removed from monitoring." (Emphasis in the original.) Compl. ¶ 36.

BlackRock's continued monitoring of Plaintiffs' personal trading accounts for almost a year after BlackRock unceremoniously laid off Mr. Hacopian humiliated and distressed Plaintiffs, aggravated certain pre-existing health conditions, and caused significant loss of sleep. Compl. ¶ 38. Moreover, BlackRock's continued monitoring of the personal financial accounts of Plaintiffs well after Mr. Hacopian's termination also briefly delayed Mr. Hacopian's receipt of thousands of dollars. Compl. ¶ 37. On January 2, 2025, Schwab agreed to give Mr. Hacopian a $5,000 bonus. Compl. ¶ 37. However, as a condition precedent to the receipt of that bonus, Schwab needed BlackRock's approval because BlackRock continued to monitor and represent itself (falsely) as Mr. Hacopian's employer with respect to Mr. Hacopian's personal financial accounts. Compl. ¶ 37. As a result, Mr. Hacopian's receipt of that bonus was delayed by approximately one week.

The January 6, 2024, email Mr. Hacopian received from BlackRock in response to his request that the firm stop monitoring his accounts confirms that Plaintiffs' accounts were not the only ones BlackRock illegally intercepted and monitored. Compl. ¶ 39. BlackRock has more than 20 offices in the United States and employs thousands of people, and Mr. Hacopian was part of an approximately 600-person reduction in force. Compl. ¶ 40. As such, Plaintiffs bring this claim on behalf of a class of similarly situated individuals who have been injured by

BlackRock's policy and practice of illegally monitoring brokerage accounts, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and/or 23(c)(4).

## STANDARD

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although not required to credit conclusory allegations or legal conclusions couched as factual allegations, in determining if a claim is sufficiently plausible to withstand dismissal, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Hamilton v. Westchester Cty.*, 3 F.4th 86, 90-91 (2d Cir. 2021).

## ARGUMENT

## I.    <u>Plaintiffs Have Article III Standing</u>

To enjoy Article III standing, a plaintiff must allege that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). In order to plausibly plead an injury in fact, the plaintiff must allege that he has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Courts considering Wiretap Act claims

have found Article III standing even without allegations of concrete monetary injury or emotional distress because the statutory violation bears a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts: the common law torts of invasion of privacy and intrusion upon seclusion. *See, e.g., Matera v. Google Inc.*, 2016 U.S. Dist. LEXIS 130778, at *21-41 (N.D. Cal. Sept. 23, 2016) (collecting and analyzing cases). However, in this case, Plaintiffs also allege concrete monetary injury and emotional and physical distress resulting from BlackRock's wrongful acts, including a delay in their receipt of $5,000 and the loss of interest thereon, and particularized emotional pain and suffering. *See* Compl. ¶¶ 37-38, 76, 84.

The Second Circuit has described the injury-in-fact requirement as "a low threshold." *John v. Whole Food Markets Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017). Certain tangible harms, such as monetary harms, "readily qualify as concrete injuries under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Accordingly, "if a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Id.*

This Court has repeatedly recognized that a delay in receipt of money due constitutes injury in fact for Article III standing. *See, e.g., Gillett v. Zara USA, Inc.*, 2022 U.S. Dist. LEXIS 143434, 2022 WL 3285275, at *6-7 (S.D.N.Y. Aug. 10, 2022) (loss of use of money to which one is entitled is a cognizable injury); *Porsch v. LLR, Inc.*, 380 F. Supp. 3d 418, 424 (S.D.N.Y. 2019) ("[T]emporary deprivation of money to which a plaintiff has a right constitutes a sufficient injury in fact to establish Article III standing."); *Rankine v. Levi Strauss & Co.*, 2023 U.S. Dist. LEXIS 89064, 2023 WL 3582323, at *3-4 (S.D.N.Y. May 22, 2023) (collecting cases).

BlackRock relies on *Rosario v. Icon Burger Acquisition LLC*, 2022 U.S. Dist. LEXIS 11454 (E.D.N.Y. Jan. 21, 2022), to argue that late payment is insufficient to confer Article III standing, but *Rosario* held that "late payment . . . can constitute a concrete harm sufficient to confer standing on a plaintiff" where, as here, the plaintiff has alleged that the delay resulted in lost interest earnings. *Id*. at *7-9; *see also* Compl. ¶ 84 (Plaintiffs have suffered "monetary damages and loss of interest revenue resulting from delays in personal financial transactions."). BlackRock's reliance on *Maddox v. Bank of New York Mellon*, 19 F.4th 58, 66 (2d Cir. 2022), is similarly misplaced. In *Maddox*, the Second Circuit recognized that allegations of reputational harm may confer Article III standing, but that the plaintiff had not alleged that reputational harm materialized as a result of defendant's acts. *Id*. at 65-66. While Plaintiff Hacopian here has plead particularized emotional and physical distress resulting from BlackRock's wrongful acts, *see* Compl. ¶ 38 (Plaintiff suffered humiliation, loss of sleep, aggravation of preexisting health conditions and distress resulting from BlackRock's continued unlawful monitoring of his personal financial accounts, including the draw down of retirement funds following his abrupt termination by BlackRock), Plaintiffs' allegations of concrete monetary injury alone are sufficient to confer Article III standing. Compl. ¶¶ 37, 76, 84.

II.    **Plaintiffs State Claims under the Federal Wiretap Act, for Breach of Contract, and for Breach of the Implied Covenant of Good Faith and Fair Dealing**

A.    *Federal Wiretap Act*

The Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*, prohibits the intentional interception of an electronic communication without prior consent. *See* 18 U.S.C. § 2511(1)(a). Plaintiffs duly allege that, by surreptitiously monitoring the personal trading activity of former employees and their associates, BlackRock intentionally and without prior consent "intercepted" communications that were reasonably expected to be private. Courts have validated Wiretap Act

claims in a variety of comparable circumstances, including, for instance, when smartphone and smart-speaker software surreptitiously captures conversations, *see Lopez v. Apple*, 519 F. Supp. 3d 672 (N.D. Cal. Feb. 2021); internet companies surreptitiously monitor user activity, *see Brown v. Google LLC,* 525 F. Supp. 3d 1049 (N.D. Cal. 2021); social media companies scan the content of private messages, *see Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836 (N.D. Cal. 2014); and email settings are surreptitiously configured to automatically forward messages, *see Zaratzian v. Abadir,* 2014 U.S. Dist. LEXIS 129616 (S.D.N.Y. Sept. 2, 2014).

      1.    <u>Interception</u>

BlackRock argues that the Wiretap Act only applies to interceptions that occur contemporaneously with a communication's transmission—or, as BlackRock puts it, while communications are "in flight." Although some courts in this District have required contemporaneity, "no such requirement appears explicitly in the [Wiretap] Act." *Zaratzian*, 2014 U.S. Dist. LEXIS 129616, at *14; *see also Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009) (rejecting narrow interpretation of "interception"). Even assuming *arguendo* that the Wiretap Act requires an interception to be contemporaneous with the communication, contemporaneous does not necessarily mean captured "in flight." *Zaratazian* is instructive on this point. It considered allegations of unauthorized email-forwarding, and it adopted a "commonsense application of the contemporaneity requirement" to conclude that communications need not be "in flight" to satisfy the Wiretap Act's requirements. *Id.* at *16-17. *Zaratazian* drew from the Seventh Circuit's decision in *United States v. Szymuszkiewicz*, which addressed whether a defendant violated the Wiretap Act when he surreptitiously configured his supervisor's Microsoft Outlook account to automatically forward messages to him. 622 F.3d 701, 703 (7th Cir. 2010). The Seventh Circuit held that receiving forwarded emails without authorization satisfied the Wiretap Act's putative

contemporaneity requirement. In so doing, the Seventh Circuit rejected the defendant's efforts to analogize the Wiretap Act's requirements to a football player "catching a thing in flight" because, it concluded, "contemporaneous" does not mean "in the middle," and "for an email there is no single 'thing' that flies straight from sender to recipient." *Id.* at 705-06.

*Zaratazian* also drew from dicta in *Hall v. EarthLink Network, Inc.,* where, likewise, the Second Circuit rejected arguments that, for Wiretap Act liability to attach, an interception must occur while messages are in transit. 396 F.3d 500, 503 n.1 (2d Cir. 2005). These arguments lack merit, the Second Circuit explained, because the allegations involved the continued receipt of messages rather than the acquisition of previously stored electronic communications. *Id.* (collecting cases from the Third, Fifth, Ninth, and Eleventh Circuit). This case also alleges the continued unauthorized receipt of private financial information through an established feed. For purposes of the Wiretap Act, whether that information was intercepted in flight is not dispositive.

Moreover, *Zaratazian* was decided on a summary judgment motion after full discovery, not on a motion to dismiss the pleadings. Here too, the question of whether an "interception" occurred for purposes of the Wiretap Act is a question of fact not susceptible to resolution on a motion to dismiss. *See also Campbell*, 77 F. Supp. 3d at 840-41 (denying motion to dismiss Wiretap Act claim because "there is no evidentiary record" from which the court can make a determination, and "[w]hile Facebook may ultimately produce evidence showing that the messages were actually accessed while in storage, not transmission, that issue is premature at this stage of the case, and would be better addressed as part of a motion for summary judgment with a more developed factual record") (citing *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1027-28 (N.D. Cal. 2014)).

The cases BlackRock cites are inapposite. *Backhaut v. Apple, Inc.*—which was decided on summary judgment, not on the pleadings, and is heavily redacted to obscure the processes involved in the alleged wiretap—held that there can be no interception under the Wiretap Act if acquisition occurs while the message is in storage. 148 F. Supp. 3d 844, 849-50 (N.D. Cal. 2015). Similarly, *Snyder v. Fantasy Interactive, Inc.* involved allegations that defendants illegally accessed stored messages by hacking into someone's account. 2012 U.S. Dist. LEXIS 23087, at *2 (S.D.N.Y. Feb. 9, 2012). It did not include plausible allegations of interception under the Wiretap Act. Here, by contrast, Plaintiffs do not allege that BlackRock acquired their personal trading information from computerized storage or by hacking. Rather, Plaintiffs duly allege that BlackRock violated the Wiretap Act by using a honed, otherwise legitimate feed to continue to intercept Plaintiffs' sensitive financial information well after Mr. Hacopian's consent had expired.

>2. <u>Consent</u>

BlackRock does not—because it cannot—argue that its employees consent to post-employment monitoring. Instead, it tries to pin implied consent on brokerage firms like Schwab. As the party seeking the benefit of the exception, it is BlackRock's burden to prove consent, *Matera*, 2016 U.S. Dist. LEXIS 130778, at *51, and BlackRock cannot discharge its burden at this stage of the case. "Consent . . . is not to be cavalierly implied," *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983), and "a reviewing court must inquire into the dimensions of the consent and then ascertain whether the interception exceeded those boundaries," *Blumofe v. Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003). "Consent may be explicit or implied, but it must be actual consent rather than constructive consent." *Id.* It is axiomatic that one cannot consent to what one does not know.

Under the Wiretap Act, "the question of express consent is usually a question of fact, where a fact-finder needs to interpret the express terms of any agreement to determine whether these agreements adequately notify individuals regarding the interceptions." *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957, at *57 (N.D. Cal. March 2014). Respecting implied consent, "[c]ourts have cautioned that implied consent applies only in a narrow set of cases." *In re Google Inc. Gmail Litig. ("Gmail"),* 2013 U.S. Dist. LEXIS 172784, at *47 (N.D. Cal. Sept. 26, 2013). "The critical question with respect to implied consent is whether the parties whose communications were intercepted had adequate notice of the interception." *Id.* Moreover, "consent within the meaning of section 2511(2)(d) . . . can be limited. It is the task of the trier of fact to determine the scope of the consent and to decide whether and to what extent the interception exceeded that consent." *Watkins*, 704 F.2d at 582.

BlackRock fails to show as a matter of law that Schwab knowingly agreed to share the personal financial information of BlackRock's former employees and their associates. The "critical question" is whether Schwab "had adequate notice of the interception" at issue, *Gmail*, 2013 U.S. Dist. LEXIS 172784, at *47, but, at this juncture, it remains unclear exactly what Schwab consented to. Although Schwab may have generally consented to the interception of personal trading information, BlackRock does not demonstrate that Schwab consented to, or even knew about, its monitoring of personal trading information of *former* employees and their associates. BlackRock suggests that Schwab must have known that BlackRock was capable of monitoring the trading activity of former employees, but BlackRock's capabilities are beside the point. Whatever general awareness Schwab may have had about BlackRock's capability is insufficient to establish implied consent as a matter of law. *See Gmail*, 2013 U.S. Dist. LEXIS 172784, at *47 ("That the person communicating knows that the interceptor has the *capacity* to

monitor the communication is insufficient to establish implied consent."). BlackRock does not identify any occasion when it actually informed any Approved Broker that it would continue to monitor trading activity long after employees had separated from the company. Inferring consent under these circumstances would "thwart" the Wiretap Act's "strong purpose to protect individual privacy by strictly limiting the occasions on which interception may lawfully take place." *Watkins*, 704 F.2d at 582.

Courts have routinely denied motions to dismiss in similar circumstances. *See, e.g., Brown*, 525 F. Supp. 3d at 1068 ("[E]ven assuming that Google established that websites generally consented to the interception of their communications with users, Google does not demonstrate that websites consented to, or even knew about, the interception of their communications with users who were in private browsing mode."); *Lopez*, 519 F. Supp. 3d at 685 (denying Apple's motion to dismiss for failure to establish consent because "[e]ven if [p]laintiffs consented to use Siri generally, they allege that their consent was limited to [certain] situations . . . ."); *Campbell*, 77 F. Supp. 3d at 847-848 (rejecting implied consent defense because the defendant did not establish "consent to the specific practice" being challenged, "[a]nd because the court is without any evidentiary record at this stage of the case").

Courts have even denied summary judgment in similar circumstances. In *Zaratzian*, for instance, the court found that the *scope* of the plaintiff's consent was a genuine issue of material fact because it was not persuaded that, as a matter of law, plaintiff's initial consent constituted "wholesale" consent to interception "in *perpetuity*." 2014 U.S. Dist. LEXIS 129616, at *21-23 (emphasis in the original) (citing *Pharmatrak,* 329 F.3d at 19 ("A party may consent to the interception of only part of a communication or to the interception of only a subset of its communications."); *Watkins*, 704 F.2d at 581-82 ("[K]nowledge of the *capability* of monitoring

alone cannot be considered implied consent . . . . It is the task of the trier of fact to determine the scope of the consent and to decide whether and to what extent the interception exceeded that consent."); *In re Google Inc. Gmail Litig.*, 2014 U.S. Dist. LEXIS 36957, at *16 ("Implied consent is an intensely factual question that requires consideration of the circumstances surrounding the interception to divine whether the party whose communication was intercepted was on notice that the communication would be intercepted."); *see also Rassoull v. Maximus, Inc.*, 2002 U.S. Dist. LEXIS 21866, at *11 (D. Md. Nov. 8, 2002) (denying summary judgment because question of consent "must take into account the circumstances surrounding a party's expectations and behavior") (citing *Griggs-Ryan v. Smith*, 904 F.2d 112, 116-117 (1st Cir. 1990), and *Watkins*, 704 F.2d at 581).

The cases on which it relies do not support BlackRock's contention that this case should be dismissed because of consent. For instance, *U.S. v. Rittweger*, 258 F. Supp. 2d 345 (S.D.N.Y. 2003), is a criminal case interpreting an evidentiary rule on a motion to suppress, and it is not probative for a Rule 12 motion. And, in *Sze v. Pang*, 2015 U.S. Dist. LEXIS 151813 (S.D.N.Y. Nov. 9, 2015), *Cohen v. Casper Sleep Inc.,* 2018 U.S. Dist. LEXIS 116372 (S.D.N.Y. July 12, 2018), and *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001), there was clear evidence of one-party consent. Here, by contrast, questions about the contours of Schwab's consent abound.

### B.    Breach of Contract

The PTP is the agreement that governs the personal trading and investment activities of BlackRock employees. Compl. ¶ 12. In relevant part, the PTP requires BlackRock employees to disclose their personal financial accounts and trading activities, and it permits BlackRock to monitor and approve the same. *Id.* at ¶¶ 13, 20.

Section 3.1 of the PTP requires all BlackRock employees and Contingent Workers (collectively, "employees") to "disclose brokerage or other investment accounts, including private investments, trusts or investment clubs in which you make an investment decision or have direct influence or control . . . or a direct or indirect beneficial ownership interest" and further includes disclosures of the "accounts for spouses, domestic partners, dependent children or any other person on behalf of whom you make investment decisions or have direct influence of control." Schoenfeld Decl., Ex. 1. Section 5.1 of the PTP requires employees to receive approval from BlackRock before undertaking any personal investment transactions. *Id*. In addition, Section 15 of the PTP states that "Employee personal trading is subject to monitoring by BlackRock," while Section 5.2 provides that "Spousal accounts . . . are subject to periodic monitoring." *Id*. In no uncertain terms, the PTP applies only to BlackRock employees and their families/dependents.

The Complaint sufficiently pleads the elements necessary to state a claim for breach of contract under New York law: (1) the existence of the agreement, namely, the PTP, Compl. ¶¶ 12-17; (2) Plaintiffs' compliance with the terms of the PTP, Compl. ¶¶ 20-22; (3) BlackRock's breach of Section 15 of the PTP by its continued monitoring of personal trading accounts after Mr. Hacopian was no longer an employee of BlackRock, Compl. ¶¶ 24-25; and (4) damages, including a delayed payment of $5,000 to Plaintiffs and interest thereon, Compl. ¶¶ 37-38.

BlackRock argues that the PTP does not form an enforceable agreement. But New York law makes clear that a written company policy may form an enforceable agreement. *See, e.g., Graff v. Enodis Corp.*, 2003 U.S. Dist. LEXIS 4899, 2003 WL 1702026, at *1 (S.D.N.Y. March 28, 2003) (policy bulletin calculating commissions formed a contract between employer and employee); *Albanese v. Citicapital Corp.*, 2007 U.S. Dist. LEXIS 117565, at *14 (E.D.N.Y.

15

March 26, 2007) (discretionary bonus policy is an enforceable agreement); *Ferrand v. Credit Lyonnais*, 2003 U.S. Dist. LEXIS 17202, at *41 (S.D.N.Y. Sept. 20, 2003) (same); *see also Boykin-Smith v. New York Institute of Technology*, 2023 N.Y. Misc. LEXIS 11500 (NY Sup. Nassau Cty., Dec. 17, 2023) (upholding breach of contract claim based on representations from defendant's official website, official policy documents, and academic catalog).

The cases BlackRock relies on to argue that company policy documents like the PTP cannot form an enforceable agreement all concern whether language in an employee handbook voids the employee's "at will" status under New York law. *See DeMicco v. Home Depot USA, Inc.*, 101 F. Supp. 2d 122, 126 (E.D.N.Y. 2000) (employee handbook that set forth disciplinary policy did not void employee at will status). The answer to this question (which has no relevance to the claims raised here) is usually, no, unless the employee handbook contains specific language limiting the employer's right to terminate the employee. *Kunda v. Caremark PHC, LLC,* 119 F. Supp. 3d 56, 64 (E.D.N.Y. 2015); *see also Lobosco v. N.Y. Tel. Co/NYNEX* , 751 N.E.2d 462, 465 (N.Y. 2001) ("NYNEX has made clear through its employee manual—upon which plaintiff claims reliance—that it may terminate employment at will. Thus, plaintiff cannot reasonably impose an express or implied contractual obligation on NYNEX that would limit its right to terminate plaintiff's employment."). Relying on these cases, BlackRock argues that because the PTP does not restrict BlackRock's rights, it is not an enforceable agreement. But these cases addressing employee at will status plainly are inapposite. Here, Mr. Hacopian is not challenging his termination by BlackRock. Rather, the disputed issue is whether BlackRock violated Sections 5.2 and 15 of the PTP by continuing to monitor Plaintiffs' personal trading accounts for nearly one year following Mr. Hacopian's separation from BlackRock. The answer to this relevant question is, undoubtedly, yes.

16

BlackRock also argues that the PTP is not an enforceable contract because it lacks mutual consideration. This is incorrect. Pursuant to the PTP, as a condition of continued employment, employees are required to disclose their personal financial accounts and trading activities. In exchange, BlackRock may monitor and decide whether to approve the personal financial activities of its employees. Thus, the employee and BlackRock have exchanged something of value. *See Personalized Media Communs. v. Starsight Telecast, Inc*., 2000 U.S. Dist. LEXIS 14185 (S.D.N.Y. Sept. 27, 2000) (consideration is mutual where something of value is exchanged) (citing *Daniel Goldreyer, Ltd. v. Van De Wetering*, 2017 A.D.2d 434, 438 (1st Dept. 1995) (holding whether contract is void for lack of consideration is an issue of fact that should not be decided on a motion to dismiss, but that even the slightest consideration may suffice)).

### C.    *Implied Covenant of Good Faith and Dealing*

New York implies a duty of good faith and fair dealing for all contracts. *See Dalton v. Educ. Testing Serv*., 663 N.E.2d 289, 291 (N.Y. 1995); *Levin v. HSBC Bank USA, N.A*., U.S. Dist. LEXIS 6062, at *29 (N.Y. Sup. Ct. June 26, 2012) ("A plaintiff may bring a claim for breach of the covenant of good faith and fair dealing independently of any other claims for breach of contract."). Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party. *Carvel Corp. v. Diversified Mgmt. Group, Inc*., 930 F.2d 228, 231 (2d Cir. 1991).

BlackRock's standard form PTP permits BlackRock to monitor the financial accounts and trading activity of its employees, and it gives BlackRock the power to decide whether to grant approval of their personal financial transactions. Nothing in the PTP permits BlackRock to continue monitoring the financial accounts and trading activities, and to determine approval for

personal financial transactions, of former employees. However, BlackRock argues that, because there is no language in the PTP that requires BlackRock "to cease monitoring its employees' brokerage accounts upon their departure," there is no express breach of contract. BlackRock Mem. of Law at 20. Nevertheless, once given access to monitor, and discretion to approve, its employees' personal financial transactions, BlackRock must exercise this function in good faith. BlackRock has failed to exercise its discretion in good faith, and it has breached the implied covenant by continuing to monitor the personal financial account information of Plaintiffs and other former employees and their families, and to continue to hold itself out (falsely) as their employer with authority to grant or deny approval of their personal financial transactions.

BlackRock argues that the claim for violation of the covenant of good faith should be dismissed as duplicative of the breach of contract claim. However, nothing prevents pleading both claims—only recovering under both claims is prohibited. *See Sorotzkin v. EmblemHealth Inc*., 2023 U.S. App. LEXIS 29746, at *6 (2d Cir. Nov. 8, 2023) (violation of the covenant of good faith and fair dealing can be pled in the alternative to a claim for breach of the mortgage contract and a party is precluded only from recovering under both theories at the same time). Moreover, "the implied covenant can operate independent of express contractual terms as a freestanding basis for breach of contract, so long the implied covenant does not nullify express terms of the contract or otherwise create independent contractual rights." *Shuang You Wu v. JP Morgan Chase Bank, N.A*., 2024 U.S. Dist. LEXIS 30494, at *7 (S.D.N.Y. Feb. 22, 2024).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny BlackRock's

Motion to Dismiss in its entirety. Should the Court grant BlackRock's motion, Plaintiffs

respectfully request that any dismissal be without prejudice and with leave to amend.

Dated:      New York, New York
            May 9, 2025
                            **GISKAN SOLOTAROFF & ANDERSON LLP**

                    By:     */s/Raymond Audain*
                            Raymond Audain
                            Catherine Anderson
                            raudain@gslawny.com
                            canderson@gslawny.com
                            212-847-8315
                            1 Rockefeller Plaza, 8th Floor
                            New York, NY 10020

                            *Attorneys for Plaintiffs and the Class*

**LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE**

I hereby certify that this Memorandum of Law complies with Local Rule 7.1(c)'s word-
count limitations. Excluding the caption, table of contents, table of authorities, signature block,
and this certification, the number of words in the document is 5,551.

Dated:      New York, New York
            May 9, 2025


                            */s/Raymond Audain*
                            Raymond Audain

19