THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARMEN HACOPIAN and LUSINE HAYRAPETYAN, *individually and on behalf of all others similarly situated*,<br><br>                                Plaintiffs,<br><br>         v.<br><br>BLACKROCK, INC. and JOHN DOE ENTITY 1,<br><br>                                Defendants. | No. 1:25-cv-2361 (JSR)<br><br>Hon. Jed S. Rakoff |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BLACKROCK, INC.'S MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     Plaintiffs Lack Article III Standing To Bring Their Claims ............................................... 1

II.    Plaintiffs Fail To State A Claim Under The Federal Wiretap Act ...................................... 4

     A.     Plaintiffs Have Not Plausibly Alleged Interception of Their Communications with Approved Brokers ................................................................................. 4

          1.     "Interception" under the FWA must occur contemporaneously with transmission. ................................................................................................. 5

          2.     Plaintiffs have not plausibly alleged an interception under the FWA. ....... 6

     B.     The Approved Brokers' Consent Is Clear from the Face of the Complaint ........... 7

III.   Plaintiffs Fail To State A Contract Claim ............................................................................ 9

     A.     The PTP Is Not an Enforceable Agreement ............................................................ 9

     B.     Plaintiffs Cannot State a Claim for Breach of the Implied Covenant ................... 11

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*,
   572 F. Supp. 3d 26 (S.D.N.Y. 2021)..................................................................................11

*Annabi v. New York University*,
   2023 WL 6393422 (S.D.N.Y. Sept. 29, 2023)......................................................................10

*Apfel v. Prudential-Bache Securities Inc.*,
   616 N.E.2d 1095 (N.Y. 1993)..............................................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................5

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*,
   259 F. Supp. 3d 16 (S.D.N.Y. 2017)....................................................................................11

*Boulton v. Community.com, Inc.*,
   2025 WL 314813 (9th Cir. Jan. 28, 2025) ........................................................................6, 7

*Campbell v. Facebook, Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................................................................................7

*Gillett v. Zara USA, Inc.*,
   2022 WL 3285275 (S.D.N.Y. Aug. 10, 2022) ...................................................................3, 4

*Hall v. EarthLink Network, Inc.*,
   396 F.3d 500 (2d Cir. 2005)..................................................................................................6

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009)....................................................................................................7

*Iacovacci v. Brevet Holdings, LLC*,
   2023 WL 2631966 (S.D.N.Y. Mar. 24, 2023) ......................................................................5

*In re Google Inc. Gmail Litigation*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .....................................................................8

*In re Pharmatrak, Inc.*,
   329 F.3d 9 (1st Cir. 2003).....................................................................................................8

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) ................................................................................................6

*Kowalchuk v. Stroup*,
    873 N.Y.S.2d 43 (App. Div. 2009) ...................................................................................9

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) .............................................................................................5

*Maddox v. Bank of New York Mellon*,
    19 F.4th 58 (2d Cir. 2021) ................................................................................................3

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) .............................................................................................6

*Porsch v. LRR, Inc.*,
    380 F. Supp. 3d 418 (S.D.N.Y. 2019) ...............................................................................4

*Rankine v. Levi Strauss & Co.*,
    674 F. Supp. 3d 57 (S.D.N.Y. 2023) .............................................................................3, 4

*Sorotzkin v. EmblemHealth Inc.*,
    2023 WL 7383169 (2d Cir. Nov. 8, 2023) ......................................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ..........................................................................................................4

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ..........................................................................................................2

*United Magazine Co. v. Murdoch Magazines Distribution, Inc.*,
    146 F. Supp. 2d 385 (S.D.N.Y. 2001) .............................................................................11

*United States v. Szymuszkiewicz*,
    622 F.3d 701 (7th Cir. 2010) .........................................................................................5, 6

*Watkins v. L.M. Berry & Co.*,
    704 F.2d 577 (11th Cir. 1983) ..........................................................................................8

*Xu v. Reuters News & Media Inc.*,
    2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) .....................................................................2

*Zaratazian v. Abadir*,
    2014 WL 4467919 (S.D.N.Y. Sept. 2, 2014) .............................................................5, 6, 9

**Statutes & Regulations**

18 U.S.C. § 2510 ........................................................................................................................5

**Other Authorities**

**PRELIMINARY STATEMENT**

Plaintiffs have abandoned their New York Civil Rights Law claim (Opp. 2 n.1) and do not manage to salvage their others. *First*, Plaintiffs concede that their only injury even arguably supporting standing is an alleged one-week delay in accessing a $5,000 deposit to their brokerage account. But that sparsely pled injury does not give them standing. Plaintiffs' cases addressing Article III injury due to recurring delays in wage payments do not support their standing arguments; rather, those cases underscore Plaintiffs' shortcomings. *Second*, Plaintiffs' Federal Wiretap Act ("FWA") claim fails on the pleadings. The Complaint includes no well-pled allegation that BlackRock "intercepted" any communications between Plaintiffs and their Approved Brokers. Even if it did, the Complaint itself makes clear that Plaintiffs' Approved Brokers consented to any such alleged interception. Plaintiffs' argument that discovery is needed to determine the scope of that consent falls flat where Plaintiffs allege it was the brokers themselves who provided the "intercepted" communications to BlackRock via electronic feed. *Third*, Plaintiffs fail to establish that BlackRock's Personal Trading Policy ("PTP") is an enforceable agreement for purposes of their contract claims. And both Plaintiffs' express breach of contract and implied covenant claims fail in any event, because Plaintiffs have not identified any provision of the PTP that was breached by BlackRock's alleged conduct, nor plausibly alleged that BlackRock acted in bad faith.

The Court should dismiss the Complaint in its entirety, with prejudice.

**ARGUMENT**

**I.     Plaintiffs Lack Article III Standing To Bring Their Claims**

Plaintiffs' halfhearted standing arguments fail. *See* Opp. 6-8. No allegations in the Complaint establish that BlackRock's alleged statutory violation of the FWA "bears a close

1

relationship" to traditionally recognized privacy harms, *see id.* at 6-7, and Plaintiffs make no effort to show that their alleged "emotional and physical distress resulting from BlackRock's wrongful acts" is pled with sufficient particularity, *id.* at 7-8.  Instead, Plaintiffs repeatedly fall back on the argument that they suffered a concrete monetary injury because Hacopian allegedly "was *approved for*" a $5,000 bonus payment from Schwab on January 2, 2025, and did not receive it until "approximately" a week later.  Compl. ¶ 37 (emphasis added); *see also* Opp. 5, 7-8.  This single allegation—which does not show when Hacopian otherwise should have received the bonus payment once "approved"; whether or how he could have used it once received; or exactly how long it was delayed—does not give rise to Article III standing.

      First, Plaintiffs' one-sentence argument that standing is established because an alleged statutory violation of the FWA "bears a close relationship" to traditionally recognized privacy harms is wrong on the law.  Opp. 6-7.  *TransUnion* makes clear that it is not the alleged statutory violation itself, but "the alleged injury to the plaintiff" *resulting from* the violation that must bear a close relationship to a traditionally recognized harm to establish standing.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *see also Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *4 (S.D.N.Y. Feb. 13, 2025) (rejecting argument that because the statute at issue "codifies a substantive privacy right," the "alleged violation of that statute necessarily gives rise to a concrete injury").  Plaintiffs have not alleged (because they cannot) that BlackRock's alleged continued monitoring of their brokerage accounts amounted to an intrusion into personal affairs that would be "highly offensive to a reasonable person," as required to establish the harm of intrusion upon seclusion.  *See* Restatement (Second) of Torts § 652B (Am. L. Inst. 1977).  A bare statutory violation of the FWA, which is all that Plaintiffs have alleged, does not establish standing.  *See* Compl. ¶¶ 50-66; Br. 11-12.

2

As to their alleged emotional and physical distress, Plaintiffs have no response to BlackRock's argument that any such alleged harm is implausible and unsupported by any well-pled facts, *see* Br. 9-10—other than to point the Court back to the single paragraph alleging these vague harms in the Complaint, *see* Opp. 6-8 (citing Compl. ¶ 38). But "perfunctory allegation[s] of emotional distress, especially one[s] wholly incommensurate with the stimulant, [are] insufficient to plausibly allege constitutional standing." *Maddox v. Bank of New York Mellon*, 19 F.4th 58, 66 (2d Cir. 2021); *see also* Br. 10. Plaintiffs make no attempt to demonstrate whether or how their allegations of emotional and physical distress are any more particularized than the allegations of "great stress, mental anguish, anxiety, and distress" found lacking in *Maddox*. They are not, and so they do not confer standing here.

Plaintiffs, then, are left only with an alleged roughly one-week delay in the receipt of a bonus payment from Schwab to support their standing to have their claims heard by this Court. Plaintiffs argue that an alleged delay in payment alone can constitute a concrete monetary injury, *see* Opp. 7, but the cases they cite do not compel that conclusion here. Two of Plaintiffs' cases—*Gillett* and *Rankine*—concern challenges to repeated late payment of wages under New York labor law. *See Gillett v. Zara USA, Inc.*, 2022 WL 3285275, at *1 (S.D.N.Y. Aug. 10, 2022); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57, 61 (S.D.N.Y. 2023). While the Court in *Gillett* found that allegations of delayed payment of wages were "sufficient … to suggest that [plaintiff] suffered financial harm," 2022 WL 3285275, at *5, that is an inference much more plausibly drawn in the context of the repeated deprivation of a worker's use of his income than in the context alleged here: an "approximately" one week delay between Hacopian being "approved" for a gratuitous credit from his broker, and that credit being deposited into his brokerage account. Compl. ¶ 37. No concrete harm can be inferred from this single, vague allegation. Does the fact that Shwab

3

"approved" the credit mean Plaintiffs otherwise would have had immediate access to it, absent BlackRock's alleged conduct? The Complaint does not say. What could the credit be used for? The Complaint does not say that either. Without more to establish what, if anything, Plaintiffs were actually deprived of as a result of the alleged delay, they have not "sufficiently alleged that [they] suffered a concrete injury in fact." *Gillett*, 2022 WL 3285275, at *7.

Plaintiffs' other cases offer no more support. In *Rankine*, the plaintiff *did* specifically allege, unlike Plaintiffs here, that the delay injured him because "he could not invest, earn interest on, or otherwise use these monies that were rightfully his." 674 F. Supp. 3d at 61; *see also* Br. 7-9.[1] And while the court in *Porsch v. LRR, Inc.* concluded that a temporary deprivation of money (which Plaintiffs have not even sufficiently alleged here) can confer standing, 380 F. Supp. 3d 418, 423 (S.D.N.Y. 2019), it did so based on out-of-circuit case law and acknowledged that "[n]either the Second Circuit nor the Supreme Court have directly addressed whether loss of the time value of money is a sufficient injury in fact to establish Article III standing," *id.* at 425.

## II. Plaintiffs Fail To State A Claim Under The Federal Wiretap Act

### A. Plaintiffs Have Not Plausibly Alleged Interception of Their Communications with Approved Brokers

Plaintiffs' purely legal argument over what constitutes "interception" under the FWA, *see* Opp. 9-11, is simply an attempt to distract from a fundamental deficiency in their claim: Plaintiffs do not actually allege *any facts* sufficient to support a conclusion that BlackRock intercepted their communications with Approved Brokers. Plaintiffs' "naked assertions" of interception "devoid of

---

[1] Plaintiffs claim they have similarly alleged "loss of interest revenue," Opp. 8, but point only to a generalized allegation of monetary harm allegedly suffered by "Plaintiffs and the other members of the Class" raised in connection with their implied covenant claim, Compl. ¶ 84. Plaintiffs, however, must sufficiently "allege and show that they personally have been injured," even when raising claims on behalf of a putative class. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016).

'further factual enhancement'" are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 1. "Interception" under the FWA must occur contemporaneously with transmission.

There is no genuine dispute that for purposes of a claim under the FWA, interception "must occur contemporaneously with transmission." *Iacovacci v. Brevet Holdings, LLC*, 2023 WL 2631966, at *6 (S.D.N.Y. Mar. 24, 2023) (quoting *Luis v. Zang*, 833 F.3d 619, 627 (6th Cir. 2016) ("Every circuit court to have considered the matter has held that an 'intercept' under the Act must occur contemporaneously with transmission.")); *see also* Br. 15-16 (citing cases finding same). There is simply nothing "putative" about this requirement, Opp. 9-10, which comes from the language of the FWA itself. The statute defines "intercept" to mean—as relevant here—the "acquisition of the contents of any … electronic … communication," 18 U.S.C. § 2510(4), and "electronic communication" as the "*transfer* of" the types of information covered by the statute, *id.* § 2510(12) (emphasis added). Because "the term 'intercept' applies only to electronic *communications*, … a communication may only be intercepted when it is 'in flight,' meaning 'before the communication comes to rest'" and is no longer in transmission. *Iacovacci*, 2023 WL 2631966, at *6 (quoting *Luis*, 833 F.3d at 628).

Plaintiffs' argument to the contrary is an exercise in semantics. Plaintiffs rely on *Zaratazian v. Abadir* and *United States v. Szymuszkiewicz* to argue that intercepted "communications need not be 'in flight' to satisfy the Wiretap Act's requirements," Opp. 9-10. But in those cases, the courts merely rejected the analogy that interception had to occur "in the middle" of the communication, like "a football player 'catching a thing in flight.'" *United States v. Szymuszkiewicz*, 622 F.3d 701, 705-06 (7th Cir. 2010); *Zaratazian v. Abadir*, 2014 WL 4467919, at *6-7 (S.D.N.Y. Sept. 2, 2014) (same). Neither rejected *BlackRock's* use of "in flight" as

5

meaning "contemporaneous with [] transmission," Br. 15, and both applied the contemporaneity requirement to find an interception had occurred. *See Szymuszkiewicz*, 622 F.3d at 706; *Zaratazian*, 2014 WL 4467919, at *7.

Plaintiffs' reliance on *Noel v. Hall* and *Hall v. EarthLink Network, Inc.* is also misplaced. To start, the Ninth Circuit has recently reaffirmed its adoption of the "narrow interpretation of 'interception'" that Plaintiffs claim it rejected in *Noel*. Opp. 9 (citing *Noel v. Hall*, 568 F.3d 743, 751 (9th Cir. 2009)); *see Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) ("[F]or a communication to be 'intercepted' in violation of [the FWA], 'it must be acquired during transmission[.]'" (quoting *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002)). As for the Second Circuit's opinion in *Hall*, Plaintiffs acknowledge that the court's suggestion that interception can occur after a communication has occurred and is no longer in transit is dicta. *See* Opp. 10; *see also Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 503 n.1 (2d Cir. 2005). A passing footnote cannot overcome the overwhelming weight of authority from courts in this Circuit and others that interception must be contemporaneous with transmission for purposes of a claim under the FWA.[2] *See* Br. 15-16.

### 2. Plaintiffs have not plausibly alleged an interception under the FWA.

Plaintiffs tellingly do not point to any allegations from the Complaint to support the argument that they have sufficiently alleged BlackRock's interception of their communications with Approved Brokers. *See* Opp. 9-11. That is because the only allegation Plaintiffs make as to how BlackRock receives information on personal trading activity is that "Approved Brokers

---

[2] In any event, *Hall* is distinguishable. There the defendant—e-mail service provider EarthLink—was the *only* party actively receiving the e-mails intended for the plaintiff, who no longer had access to the EarthLink account to which the e-mails were being sent. 396 F.3d at 502. Plaintiffs make no similar allegations here.

6

generally provide an electronic feed of personal trading activity directly to BlackRock," Compl. ¶ 18. This does nothing to establish that any alleged interception occurred contemporaneously with Plaintiffs' communications to their brokers, as required for a FWA claim. *See* Br. 15-16; *supra* Section II.A.1. Plaintiffs attempt to get around this deficiency by arguing that the question of whether an "interception" *occurred* is a question of fact not resolvable on BlackRock's motion to dismiss. Opp. 10. But Plaintiffs must still plausibly *allege* interception, and they have not. *See, e.g.*, *Boulton*, 2025 WL 314813, at *1 (affirming dismissal where plaintiff's "repeated assertions that [defendant] 'intercepted' her text message [were] simply conclusory"). *Campbell v. Facebook, Inc.* is not to the contrary. *See* Opp. 10. There, plaintiffs did specifically allege that "Facebook's interception occurred in transit, in transmission, and/or during transfer of users' private messages." *Campbell*, 77 F. Supp. 3d 836, 841 (N.D. Cal. 2014). Plaintiffs here make no similar well-pled allegations of contemporaneous interception, and their "mere conclusory statements[] do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). The FWA claim should be dismissed on this basis alone.

      **B.**    **The Approved Brokers' Consent Is Clear from the Face of the Complaint**

Even if the Court concludes that Plaintiffs have plausibly alleged interception (which they have not), their FWA claim still fails because the Complaint itself reflects "clear evidence of one-party consent," Opp. 14.

Plaintiffs do not dispute that consent to interception by "a party to the communication" defeats a FWA claim, nor that their Approved Brokers, including Schwab, are "a party to the communication[s]" relevant here. *See* Br. 13. Instead, Plaintiffs argue that it is an open question whether Schwab "'had adequate notice of the interception' at issue," Opp. 12. But that makes no sense. Plaintiffs allege it was *Schwab* that provided the electronic feed of Plaintiffs' trading

7

information to BlackRock. *See* Compl. ¶ 18, 29-31. If Schwab is the party that provided the feed, it necessarily follows that Schwab knew about it. Plaintiffs' suggestions to the contrary are unsupported speculation that the Court need not accept.

Because the alleged interception here was effectuated by one of the parties to the communication, Plaintiffs' cited cases on consent are inapposite. *See* Opp. 11-14. All of Plaintiffs' cases concern allegations that *another* party engaged in surreptitious interception without the knowledge of either party to the communication—and most in situations not expressly covered by the employee policies or service agreements that defendants argued established consent. *See, e.g.*, *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) (policy allowing company to monitor sales calls did not establish employee's consent to company's monitoring of personal phone call); *In re Pharmatrak, Inc.*, 329 F.3d 9, 20 (1st Cir. 2003) (no implied consent to collection of website users' personally identifiable information by web traffic monitoring service where websites conditioned purchase of service on agreement that the service would not collect such information); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *13 (N.D. Cal. Sept. 26, 2013) (Google Terms of Service and Privacy Policies did not establish consent by senders or recipients of emails to Google's interception of email communications). None of those cases says anything about whether consent is established where a party to a communication provides the method of alleged interception, and Plaintiffs provide no basis for avoiding the straightforward conclusion that it is.

Plaintiffs suggest that even if Schwab "generally consented to the interception of personal trading information," the scope of Schwab's consent is unclear. Opp. 12. But that argument relies on the reasoning of cases like *Watkins*, *Pharmatrak*, and *Gmail*, which considered whether consent to interception *by third parties* had been established beforehand by the terms of underlying

8

employee policies or services agreements. Similarly in *Zaratzian*, *see* Opp. 13, the court considered the scope of the plaintiff's consent to the interception of her email communications to be "an issue of fact" because the defendant in that case relied on the argument that "the permission [plaintiff] gave [defendant] to set up her email account and choose a password" constituted "'wholesale' consent to [defendant] reading her personal emails in perpetuity[.]" *Zaratzian*, 2014 WL 4467919, at *8-9. Here, Schwab's consent is firmly established by its alleged act of actually *providing* the electronic feed of Plaintiffs' trade information to BlackRock—including after Hacopian's termination, when Plaintiffs' brokerage accounts were migrated to Schwab. *See* Opp. 4; Compl. ¶ 29.

No further inquiry is required to establish Schwab's consent, and Plaintiffs' FWA claim is subject to dismissal on this basis as well.

### III.  Plaintiffs Fail To State A Contract Claim

#### A.  The PTP Is Not an Enforceable Agreement

Plaintiffs acknowledge that a claim for breach of contract requires both an enforceable agreement and breach of an express term. *See* Opp. 15. Plaintiffs have established neither. Nothing in their opposition demonstrates that the PTP provides for the mutual exchange of promises necessary to form an enforceable contract, or that it contains any express provision requiring BlackRock to cease monitoring employee accounts upon termination. *See* Br. 19-21.

Under well-established New York law, an enforceable contract requires both consideration and an intent to be bound. *See Kowalchuk v. Stroup*, 873 N.Y.S.2d 43, 46 (App. Div. 2009). Plaintiffs contend that the PTP is supported by mutual consideration because employees disclose their personal accounts "as a condition of continued employment," and in exchange, BlackRock may "monitor and decide whether to approve the personal financial activities of its employees."

9

Opp. 17. But Plaintiffs fail to identify any promise *BlackRock* made under the PTP "in exchange for" employees' disclosures and BlackRock's monitoring and approval rights. *Annabi v. New York Univ.*, 2023 WL 6393422, at *6 (S.D.N.Y. Sept. 29, 2023) ("For consideration to be valid, it must be 'bargained for,' meaning that the promisor must seek it in exchange for his promise, and the promisee must give it in exchange for that promise."). Absent any "bargained for" consideration, *id.*, there is no enforceable agreement. *See Apfel v. Prudential-Bache Sec. Inc.*, 616 N.E.2d 1095, 1097 (N.Y. 1993) (consideration is only effective if "something of 'real value in the eye of the law' was exchanged"). Whether in some cases a company policy *may* be supported by consideration sufficient to establish an enforceable agreement, *see* Opp. 15-16, does not establish that the PTP is here.[3] It is not, *see* Br. 20-21, and so cannot form the basis of a contract claim.

In any event, Plaintiffs' breach of contract claim fails because they identify no express provision of the PTP that was breached by BlackRock's alleged conduct. *See* Br. 20-21. In their opposition, Plaintiffs argue that BlackRock violated Sections 5 and 15 of the PTP by continuing to monitor Plaintiffs' personal trading accounts after Hacopian's termination. Opp. 15-16. But those provisions merely establish, as Plaintiffs acknowledge, that personal investment transactions are subject to pre-clearance requirements; spousal accounts are subject to periodic monitoring; and employee personal trading is subject to monitoring. *See* Opp. 15. They impose no limitation on BlackRock. And they do not save Plaintiffs' contract claim regardless, because they are not

---

[3] Nor does the fact that BlackRock's cited cases relate to termination at will, *see* Opp. 16, change the fundamental import of those cases, which is that policy guidelines like the PTP that are unsupported by a promise made by an employer are not binding contracts, whether they relate to termination or any other facet of the employment relationship.

10

alleged in the Complaint. *See Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 33 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018).[4]

### B. Plaintiffs Cannot State a Claim for Breach of the Implied Covenant

Plaintiffs' implied covenant claim also fails in the absence of an enforceable contract. *See United Mag. Co. v. Murdoch Mags. Distrib., Inc.*, 146 F. Supp. 2d 385, 405 (S.D.N.Y. 2001), *aff'd*, 279 F. App'x 14 (2d Cir. 2008); Br. 21.

Even if the PTP were an enforceable contract, Plaintiffs fail to allege "any specific facts establishing bad faith or an illicit motive" on BlackRock's part to support an implied covenant claim. *Sorotzkin v. EmblemHealth Inc.*, 2023 WL 7383169, at *3 (2d Cir. Nov. 8, 2023). Plaintiffs' bare assertion that BlackRock acted "in bad faith" is insufficient. *See* Compl. ¶¶ 82–83; Opp. 18. *See also Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 34 (S.D.N.Y. 2021) ("There is a presumption that all parties act in good faith, so the burden of proving a breach of the covenant rests with the party asserting the absence of good faith."). Plaintiffs also failed to plead their implied covenant claim as an alternative to their breach of contract claim, as required to avoid dismissal on the basis that their implied covenant claim is duplicative of that claim. *See Sorotzkin*, 2023 WL 7383169, at *2; Br. 21-22. The implied covenant claim, like Plaintiffs' express breach claim, should be dismissed.

## CONCLUSION

Plaintiffs' claims are deficient as a matter of law and cannot be cured through amendment. This Court should dismiss all of Plaintiffs' claims against BlackRock with prejudice.

---

[4] Plaintiffs also fail to respond to the basic point that Lusine Hayrapetyan has no basis to assert any contract claim under the PTP. *See* Br. 19.

11

<table>
<tr><td>Dated: May 16, 2025</td><td>Respectfully submitted,</td></tr>
</table>

By: */s/ Alan E. Schoenfeld*
Alan E. Schoenfeld
Lydia Turnage (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich St.
New York, NY 10007
Telephone: (212) 230-8800
*alan.schoenfeld@wilmerhale.com*
*lydia.turnage@wilmerhale.com*

Bardia Vaseghi (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington D.C. 20037
Telephone: (212) 230-8855
*bardia.vaseghi@wilmerhale.com*

*Counsel for Defendant BlackRock, Inc.*

**LOCAL RULE 7.1(c) CERTIFICATE OF COMPLIANCE**

I hereby certify that this Reply Memorandum of Law in Support of BlackRock Inc.'s Motion to Dismiss complies with the formatting requirements of Local Rule 7.1(b) and the length limitation imposed by Local Rule 7.1(c) as follows.

This Reply was prepared in Times New Roman size 12 font using Microsoft Word. It contains 3,489 total words. To count the number of words in the Reply, I used the word-count software in Microsoft Word, applied specifically to include all text—including headings, footnotes, and quotations—except for the text in the caption, table of contents, table of authorities, and signature block.

Dated: May 16, 2025                                        */s/ Alan E. Schoenfeld*
                                                                                Alan E. Schoenfeld